UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FIRST AMERICAN TITLE INSURANCE COMPANY** | * * * | **CIVIL ACTION NO.** |
| **Plaintiff,** | * * | |
| versus | * * | **JUDGE** |
| **RELIANT TITLE, L.L.C., ALICIA MURLA LEE, GARY JULIAN LEE, GAYAN JUAREZ, CRYSTAL HEINE, BRENDA L. MURLA, and ABC and XYZ INSURANCE COMPANIES,** | * * * * * * * | **MAGISTRATE** |
| **Defendants.** | * * | |

* * * * * * * * * * * * * * * * * *

## COMPLAINT

Plaintiff, First American Title Insurance Company ("First American" or "Plaintiff"), files this suit on its own behalf and as subrogee of the following lenders: Urban Financial Group, Inc. ("Urban Financial"), James B. Nutter & Co. ("Nutter"), Provident Funding Associates, L.P. ("Provident"), Genworth Financial Home Equity Access, Inc. ("Genworth"), Taylor, Bean & Whittaker Mortgage Corp. ("Taylor Bean"), MetLife Home Loans ("MetLife"), and Primary Residential Mortgage, Inc. ("Primary Residential") (individually sometimes referred to herein as "Lender" and collectively referred to as "Lenders"), and hereby alleges the following in support of its Complaint against Reliant Title, L.L.C., Alicia Murla Lee, Gary Julian Lee, Gayan Juarez, Crystal Heine, Brenda L. Murla and ABC and XYZ Insurance Companies:

I.

1

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(a)(1), as this is a civil action between citizens of different states that involves an amount in controversy exceeding $75,000.00, exclusive of interest and costs.

II.

Venue is proper in the Eastern District of Louisiana pursuant to Federal Rule of Civil Procedure 1391(a)(2), as a substantial part of the events giving rise to the clams asserted in this Complaint occurred within this District.

III.

Plaintiff, First American, is a corporation organized and existing by virtue of the laws of the State of California, with its principal place of business in Santa Ana, California.  Lender, Urban Financial, is a corporation organized and existing by virtue of the laws of the State of Oklahoma, with its principal place of business in Tulsa, Oklahoma.  Lender, Nutter, is a corporation organized and existing by virtue of the laws of the State of Missouri, with its principal place of business in Kansas City, Missouri.  Lender, Genworth, is a corporation organized and existing by virtue of the laws of the State of California, with its principal place of business in Rancho Cordova, California.  Lender, Provident, is a limited partnership organized and existing by virtue of the laws of the State of California, and none of its members are citizens of the State of Louisiana.  Lender, Taylor Bean, is a corporation organized and existing by virtue of the laws of the State of Florida, with its principal place of business in Ocala, Florida.  Lender, MetLife, is a division of MetLife Bank, N.A., a corporation organized and existing by virtue of the laws of the United States of America, with its principal place of business in New Jersey.  Lender, Primary Residential, is a corporation organized and existing by virtue of the laws of the

State of Nevada, with its principal place of business in Salt Lake City, Utah.  Each Lender is an insured of First American pursuant to certain loan policies which are a subject of this action.

IV.

Made defendants herein are (i) Reliant Title, L.L.C. ("Reliant"), a limited liability corporation that is incorporated under the laws of the State of Louisiana, with its principal place of business (now closed) but formerly located at 429 Huey P. Long Ave., Gretna, Louisiana, and with its domicile address shown as 657 West Marlin Court, Terrytown, both in Jefferson Parish, Louisiana; (ii) Alicia Murla Lee ("Alicia"), the manager/member of Reliant, and Gary Julian Lee ("Gary"), a member of Reliant, who are residents of Plaquemines Parish, Louisiana, residing at 721 Spring Thyme Drive, Belle Chasse, LA 70037 (on occasion, the "Lees") (collectively, the Lees and Reliant may be referred to herein as the "Reliant Defendants"); and (iii) ABC Insurance Company, as the insurer of the Reliant Defendants.

Also made defendants herein are (i) Gayan Juarez, who upon information and belief is a Louisiana domiciliary residing in Jefferson Parish; (ii) Brenda L. Murla, who upon information and belief is a Louisiana domiciliary residing in St. Charles Parish; (iii) Crystal Heine, who upon information and belief is a Louisiana domiciliary residing in Jefferson Parish; (collectively, these defendants are referred to herein as the "Notary Defendants"); and (iv) XYZ Insurance Company, as the insurer of the Notary Defendants.

V.

As more fully shown herein, this action asserts claims for breach of several contracts and breach of fiduciary duty, as well as claims in tort for negligently performing certain closing services that caused damages to Plaintiff and Lenders.

VI.

3

BREACH OF AGENCY AGREEMENT

From 2005 to 2009, Reliant, through its principals, Gary J. Lee and Alicia Murla Lee, and their employees, acted as a title agency for First American pursuant to an agency agreement dated June 24, 2005 (the "Agency Agreement") (a copy of the Agency Agreement is attached hereto as Ex. A).

VII.

Pursuant to the Agency Agreement, Reliant, Alicia Murla Lee and other employees of Reliant issued various commitments and policies of title insurance in conjunction with the closings of conveyances and mortgages of real property.

VIII.

During this time period, Reliant, through its employees, collected funds from borrowers to cover the usual and customary costs of closing a real estate transaction, such as funds: (i) to record the conveyance and mortgage documents (the "Transaction Documents") in the public records of the appropriate parish, (ii) to pay the premiums for the lender's policies of title insurance, (iii) to pay *ad valorem* taxes owed, (iv) to satisfy and cancel prior liens and mortgages which were encumbrances on the titles to the properties which were the subject of the real estate closings and (v) and other incidental charges.

IX.

Pursuant to the Agency Agreement, the Reliant Defendants had a duty to properly record Transaction Documents, to pay and obtain cancellations of prior liens and judgments, to pay *ad valorem* taxes owed, and to issue correct complete title insurance policies to the lenders, and to pay and remit the premiums for the title insurance to First American.

X.

In at least seventy-three (73) certain instances, during a period commencing on or about the first of January 2008 and continuing through the twentieth of November 2009, the Reliant Defendants or their employees collected the funds to cover recordation costs, but failed to cause the Transaction Documents to be recorded in the corresponding land records of the appropriate parishes.

XI.

In each instance, the Reliant Defendants collected funds to cover the cost of title insurance premiums. In certain of these instances, the policies of title insurance were issued incorrectly or not issued at all; and in other instances, the Reliant Defendants did not honor commitments to issue policies of title insurance. Moreover, upon information and belief, in some instances the Reliant Defendants did not properly remit and pay to First American the portion of the premium it was owed under the Agency Agreement.

XII.

The Reliant Defendants also collected funds to satisfy prior recorded mortgages and liens. In certain of these instances, the Reliant Defendants and did not obtain cancellations of the open liens on the public record.

XIII.

Further, upon information and belief and subject to investigation, review of Reliant's financial trust accounts for the relevant periods will reveal shortages in the funds entrusted to Reliant by others in connection with transactions in which First American's insurance is involved.

XIV.

Reliant also agreed to maintain Errors and Omissions and Fidelity Insurance in an amount not less than $500,000.00 while the Agency Agreement was in effect.[1]

XV.

On October 20, 2009, First American sent a thirty (30) day notice of termination of the Agency Agreement, which termination was to be effective as of November 19, 2009. The Agency Agreement provides that all of Defendants' obligations enumerated above survive termination of the Agreement.[2]

XVI.

FAILURE TO FOLLOW LENDERS' CLOSING INSTRUCTIONS
AND BREACH OF FIDUCIARY DUTY AS SETTLEMENT AGENT

In each instance described above, the Reliant Defendants, as settlement agents in the Transactions, also had a duty to follow the closing instructions of each Lender regarding the disbursements and applications of that Lender's funds, including but not limited to applying the disbursements in accordance with the HUD-1 closing statements, and recording the mortgages.

XVII.

By way of example only and without limitation, Urban Financial's general and specific instructions to the Reliant Defendants (attached hereto as Ex. B) required proper disbursement of funds and proper recordation and delivery of the loan documents to Urban Financial by Reliant.

XVIII.

In each instance, the Reliant Defendants and/or their employees certified that all documents would be recorded in order to perfect a first lien in favor of the lender, that all funds would be disbursed in accordance with the individual settlement statements, and that any

---

[1] Ex. A, Page 2, Para.12
[2] Id., Page 3, Para.14

recorded documents were to be delivered to the lender within a certain number of days after closing.

XIX.

In January 2011, First American received claim notices from plaintiff Urban Financial that Defendants handled approximately 18 transactions improperly in the manner outlined above. Each of these 18 transactions involved "reverse mortgages" which were scheduled to be sold as part of a securitized sale in June of 2011. In preparation for the sale of the securitized mortgages, Urban Financial prepared assignments of the notes and mortgages and discovered that none of the mortgages in this group, which had been closed by Reliant, were recorded in the public records of the appropriate parishes.

XX.

In response to Urban Financial's claim, First American obtained the files from Reliant and recorded the original mortgages, issued updated policies to Urban Financial, obtained cancellations of open liens bearing against the insured titles, payment of cancelation of inscriptions recorded against the titles in the interim periods, and other acts to remedy the situation and make Urban Financial whole.

XXI.

First American contacted Reliant and demanded delivery of any other "problem" files. In response to that demand, Reliant produced approximately 50 additional closing files, presenting similar issues for Urban Financial and other Lenders, including Nutter, Genworth, Provident, Taylor Bean, MetLife and Primary Residential. Several other "problem files" are the subject of individual claims filed directly and now pending with First American. In an ongoing effort, First

American is diligently pursuing curative measures for each of the claims and is providing policies owed to its insured Lenders.

**COUNT I:  BREACH OF THE AGENCY AGREEMENT**

XXII.

Each of the above paragraphs is incorporated by reference as if set forth *in extenso* herein.

XXIII.

As a result of the acts described above, the Reliant Defendants breached one or more provisions of the Agency Agreement.

XXIV.

The Agency Agreement defines "a substantial breach" thereof as "including but not limited to:….(2) Failure to properly account for settlement funds entrusted to Agent."[3]

XXV.

Reliant in the Agency Agreement agreed to repay any losses sustained by First American by reason of Reliant's inability to account for funds entrusted to it, and also to indemnify First American for all loss, costs or damage arising out of an improper closing.[4]

XXVI.

Moreover, the Agency Agreement affords First American a right to indemnity for "all loss, cost or damage which Company may sustain or become liable for on account of:

    a. the failure of the Agent to comply with the terms of this Agreement or the rules, regulations or instructions given to Agent by Company; or

---

[3] Ex. A, p. 3, ¶ 14.
[4] Id. at p. 3, ¶ 18.

>b. (1) any improper closing or attempted closing by Agent of any transaction involving the issuance of a commitment, policy or closing protection letter of Company." [5]

### XXVII.

The Agency Agreement also affords First American a lien on all property of Agent in the event a shortage in the trust account is determined, as well as the right to declare all debts for such shortage immediately due to First American, and the right to immediate possession of Agent's property as security for the repayment.[6]

### XXVIII.

Accordingly, First American seeks to recover damages for Reliant's breach of the Agency Agreement, to enforce the guaranties for repayment and indemnity of First American's losses incurred in connection with that breach; and also seeks recognition, maintenance and enforcement of the lien afforded by the Agency Agreement in favor of First American against all property owned by Defendants; and all damages and costs associated with the foregoing.[7]

### COUNT II:  BREACH OF CONTRACT – FAILURE TO FOLLOW CLOSING INSTRUCTIONS

### XXIX.

The Reliant Defendants also entered into agreements with each Lender that required the Reliant Defendants to follow the closing instructions for the disbursements of Lender's funds.

### XXX.

These agreements imposed legally binding obligations upon the Reliant Defendants.

### XXXI.

---

[5] Id. at p. 2, ¶ 12.
[6] Id. at p.2 ¶ 11.
[7] Id.

The Reliant Defendants breached these agreements by failing to record mortgages as required, failing to secure and perfect first priority liens, and failure to disburse settlement funds in accordance with the signed Closing Statements, as required by federal law.

XXXII.

Plaintiff, in its own right and/or in its capacity as subrogee of the Lenders (as described more fully in Count IV) is entitled to recover damages as a result of the Reliant Defendants' breach, as well as all costs associated therewith.

### COUNT III:  BREACH OF FIDUCIARY DUTY – FAILURE TO FOLLOW CLOSING INSTRUCTIONS

XXXIII.

In connection with its agreement with the Lenders, the Reliant Defendants received funds from the Lenders that were required to be disbursed to other parties in accordance with the Lenders' instructions.

XXXIV.

The Reliant Defendants owed a fiduciary duty to the Lenders to follow the instructions that were given and to disburse the Lenders' funds accordingly.

XXXV.

The Reliant Defendants breached this duty, and/or were negligent in their performance of same, in that the mortgages were not recorded, first liens were not perfected, and funds were not disbursed in accordance with the signed Closing Statements as was required by federal law.

XXXVI.

Plaintiff, in its own right and/or in its capacity as subrogee of the Lenders (as described more fully in Count IV), is entitled to damages for these acts, and to recover all costs associated therewith.

## COUNT IV: SUBROGATION

XXXVII.

In addition to its rights under the Agency Agreement, First American avers that it is subrogated to the claims of its insured Lenders, by virtue of payments made by First American, through the provisions of its short form loan policies and the closing protection letters issued in conjunction with each closing, to wit:

(a) Each short form loan policy or commitment incorporates the terms and conditions of ALTA Loan Policy form, adopted 6-17-06 (attached hereto as Ex. C). Section 12 (a) thereof affords First American the right of subrogation to the claims of its insureds against third parties to the extent of the amount of any loss, costs, attorneys fees, and expenses paid by the Company on behalf of its insured; and

(b) Each closing protection letter issued in conjunction with the closings (a sample of which is attached hereto as Ex. D) gives the Company the right of subrogation to "all rights and remedies" available to the insureds against "any person or property."

XXXVIII.

Additionally, First American issued a closing protection letter (a "CPL") which affords the Lenders additional coverage against certain acts or omissions of the settlement agent in the closing transaction, in addition to its liability for the acts or omissions of a title agent in preparing and issuing a policy.

Paragraph 4 of the CPL states in pertinent part as follows:

> "The Issuing Agent is the Company's agent only for the limited purpose of issuing title insurance policies. Neither the Issuing Agent, nor the approved Attorney/Notary is the Company's agent for the purpose of

providing other closing or settlement services. The Company's liability for your losses arising from those other closing or settlement services is strictly limited to the protection expressly provided in this coverage."

XXXIX.

Through issuance of the short form loan policies and CPL in each instance, First American is subrogated to the Lender's rights and remedies against Defendants for closing services as well as title services.

## COUNT V:  NOTARY DEFENDANTS' BREACH OF LA. R.S. 35:199

XL.

In each instance, the Transaction Documents were notarized before one of the Notary Defendants.  La. R.S. 35:199 imposes a duty on Louisiana notaries public to record the Transaction Documents as soon as practicable.   Plaintiff alleges that the Notary Defendants were negligent in not causing Reliant to record the mortgages.

XLI.

Plaintiff alleges that the Notary Defendants and/or their insurers are liable for the penalties and damages imposed by LSA R.S. 35:199(c).

## COUNT VI:  PIERCING THE CORPORATE VEIL

XLII.

Any protection from liability due to the Lees that would ordinarily be occasioned by Reliant's status as a limited liability company should be set aside due to the *ultra vires* actions of the Lees in each of the instances which are the subject of this matter.

## COUNT VII:  INSURANCE COVERAGE ALLEGATIONS

XLIII.

Pursuant to the Agency Agreement, the Reliant Defendants agreed to maintain Errors and Omissions and Fidelity Insurance in an amount not less than $500,000.00[8]

XLIV.

Upon information and belief, ABC Insurance a policy of insurance providing coverage to the Reliant Defendants for the actions complained of herein.  Pursuant to La. R.S. 22:1269, Plaintiff seeks to recover the damages complained of herein from ABC Insurance Company.

XLV.

Upon information and belief, XYZ Insurance Company issued a policy of insurance providing coverage to the Notary Defendants for the actions complained of herein.  Pursuant to La. R.S. 22:1269, Plaintiff seeks to recover the damages complained of herein from XYZ Insurance Company.

**COUNT VIII:  FAILURE TO PROCURE INSURANCE COVERAGE**

XLVI.

In the alternative, and in the event the Reliant Defendants failed to maintain the insurance described in Count VII, Plaintiff has sustained damages as a result of the Reliant Defendants breach of the Agency Agreement in failing to procure the insurance set forth therein.

**DAMAGES**

XLVII.

As a result of all the foregoing actions of the Reliant Defendants described in Paragraphs I through XLVI, Plaintiff has sustained and will continue to sustain the following, non-exclusive damages:

1. All costs of recordation of the Transaction Documents; all costs of preparation and recordation of documents to effect cancelation of prior liens and inscriptions; all costs of

---

[8] Id., Page 2, Para.12

preparation and recordation of documents to effect cancelation for intervening liens, inscriptions, and payment of any liens or taxes;

2. Remittance and payment of premiums owed to First American; and

3. All other damages, fines, penalties, impositions and abstractors' fees, notaries' fees and attorneys' fees as allowed by contract and applicable law.

WHEREFORE, a case and controversy exists between Plaintiff and all Defendants regarding certain breaches of contract and duties owed to Plaintiff and Lenders, and as a result of these breaches Plaintiff prays for the following relief:

THAT after all delays and proceedings are had that there be judgment in favor of Plaintiff First American, in its own right and as subrogee of Lenders, against defendants Reliant, Alicia Murla Lee, Gary Julian Lee, Crystal Heine, Brenda L. Murla, and Gayan Juarez and their insurers, declaring them liable for all monetary loss, legal costs of curative efforts including curative fees, recordation costs, payment of open encumbrances and taxes, unpaid premiums, attorneys' fees, abstractors' fees, and notaries' fees incurred by First American and other damages;

THAT there be judgment in favor of Plaintiff piercing the corporate veil of Reliant and holding the Lees liable *in personam*;

THAT there be judgment in favor of First American which recognizes and maintains that certain lien granted to First American in the Agency Agreement and makes the lien enforceable against all property, whether real or personal, owned by the Lees and Reliant;

THAT there be judgment in favor of Plaintiff against any and all insurers of Reliant, the Lees or their employees;

THAT there be judgment in favor of Plaintiff against Crystal Heine, Gayan Juarez, and Brenda L. Murla and each of their respective insurers for negligence in failing to cause the recordation of the Transaction Documents in a timely fashion and imposing the penalty afforded by LSA R.S. 35:199 payable to First American; and

THAT there be an award of prejudgment and postjudgment interest in Plaintiff's favor, and for all other relief, in law or equity, to which Plaintiff may be entitled.

Plaintiff prays for trial by jury.

Respectfully submitted,

/s/*Seth A. Schmeeckle*
**Ralph S. Hubbard III T.A., La. Bar No. 7040**
**Seth A. Schmeeckle, La. Bar No. 27076**
**Rose McCabe LeBreton, La. Bar No. 08216**
**Kristen Gresham, La. Bar No. 33161**
**Daniel Centner, La. Bar. No. 33055**
**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone:   (504) 568-1990
Facsimile:   (504) 310-9195
e-mail:   rhubbard@lawla.com
          sschmeeckle@lawla.com
          dcentner@lawla.com
          rlebreton@lawla.com
          kgresham@lawla.com
**ATTORNEYS FOR PLAINTIFF**